**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**RONALD YARBOROUGH,**<br><br>**Defendant.** | **Case No. 24-CR-18 (BAH)** |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

Defendant Ronald Yarborough should be detained pending trial under 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm).  In this case, police found Mr. Yarborough in possession of a stolen firearm in his waistband, loaded with 9mm ammunition.  His possession of a loaded firearm is particularly concerning because he was released from prison in May 2023 and is currently on probation for Assault with a Dangerous Weapon (firearm) and Unlawful Possession of a Firearm.  That case involved Mr. Yarborough firing multiple rounds in the middle of the street at a person and a van as it drove away in Northwest D.C.

Mr. Yarborough's actions to obtain a gun after a conviction like this—one that shows he has no qualms in shooting at others—shows that no combination of conditions will ensure the safety of our community.  And, as explained below, Mr. Yarborough has repeatedly been given opportunities to succeed in community supervision and has only escalated his behavior.  In addition to committing this offense while under probation supervision, he previously had his misdemeanor probation revoked and he failed to meet the conditions of an amended sentencing agreement in a drug case.

Under the 18 U.S.C. § 3142(g) factors analyzed below, no conditions or combination of conditions short of detention will ensure the safety of the community.   This Court should detain Mr. Yarborough pending trial.

## BACKGROUND

A grand jury indicted Ronald Yarborough on January 9, 2024, for a single count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). An initial appearance was held before the Honorable Judge Robin M. Meriweather on January 11, 2024. At that hearing, the Government sought Mr. Yarborough's detention pending trial.   A detention hearing is set for January 16, 2024.

### A. This Case

On January 4, 2024, Officers Gregory McCourt and Breandon Burke turned in their patrol car from P Street onto the 1400 block of North Capitol Street NW.   Defendant Ronald Yarborough, who was standing on the sidewalk, noticed the patrol car.    Officer McCourt saw him immediately make an exaggerated movement, lifting the right front side of his outer jacket and clearly stuffing something into his waistband area. Through Officer McCourt's training and experience as a police officer, he knew this to be a movement consistent with that of a person drawing or holstering a firearm in the appendix carrying position.

On approaching Mr. Yarborough, Officer McCourt noticed a bulge in the front right of Yarborough's waistband area, under his jacket, where that portion of the jacket was farther away from his body than the other side. Officer McCourt asked Mr. Yarborough if he had a firearm in

his waistband.    Mr. Yarborough deflected the question, telling officers that he just had "weed" in his jacket pocket.    He then pulled a bag of a green leafy substance from his coat pocket.



*Figure 1 – Body-worn camera still shot showing Mr. Yarborough showing officers the "weed" he took out of his coat pocket*

Officer McCourt advised Mr. Yarborough that he was being stopped and that a protective pat down would be conducted. Mr. Yarborough then fled from officers, who tried to stop him. Officer McCourt felt a hard metal object in Mr. Yarborough's waistband, consistent with the grip of a handgun. While trying to stop him, Mr. Yarborough's jacket was pulled up, revealing the firearm. At some point in the struggle, Mr. Yarborough tried to pull the firearm out of his waistband. Officer Burke prevented this, retrieving the firearm without incident.



*Figure 2 – Body worn camera still shot of the firearm in Mr. Yarborough's waistband*

Mr. Yarborough then fled again, removing his outer jacket on O Street NW. Officer McCourt chased after him, following him around the block and down an alley before finding him inside a basement apartment unit at the intersection of P Street and North Capitol. A witness came out of the apartment to tell officers that a person was inside, and he did not know who they were. The witness said that Mr. Yarborough fled into the unit, showing the witness his open bare waistband area by pulling his interior jacket open as if to display he did not have a weapon. Mr. Yarborough does not live at this address and did not have permission to be there. He was taken to into custody without incident.

The green leafy substance that Mr. Yarborough showed to officers, and that officers later recovered in his outer jacket, field tested positive for amphetamines. The bag weighed approximately 12 grams with packaging.

The recovered firearm was a black Sig Sauer P320 9 mm handgun. The handgun had nine

4

rounds of ammunition in the magazine, which could hold up to fifteen rounds.   This firearm had been reported stolen just a few days before, on December 30, 2023, from the 1500 block of 7th Street NW in the District of Columbia.   The firearm was stolen after someone broke into the vehicle where it was stored.   This area is less than a mile from where Mr. Yarborough was arrested.



*Figure 3 – The stolen firearm and 9mm ammunition recovered from Mr. Yarborough*

When this offense occurred, Mr. Yarborough had multiple prior felony convictions from the Superior Court of the District of Columbia that prohibited him from possessing this firearm:

- Case number 2020-CF3-005933:

    o Conviction for Assault with a Dangerous Weapon, with a sentence of 48 months incarceration, with all but 36 months suspended, and two years' supervised probation.

     ○  Conviction for Unlawful Possession of a Firearm, with a sentence of 24 months incarceration, with all but 18 months suspended, and 2 years supervised probation.

- Case number 2019-CF2-003501:

     ○  Conviction for Attempted Distribution of a Controlled Substance (cocaine), with a sentence of 18 months, with all but four months suspended.

In the 2020 case, Mr. Yarborough was also ordered to register on the District of Columbia's gun offender registry.   As Mr. Yarborough had been sentenced to more than one year on each of his felonies, actually served more than one year on the 2020 case, was ordered to register on the gun offender registry, and had a previous conviction for being a felon in possession, he knew that he was prohibited from possessing this firearm.

### B. The Defendant's Criminal History

Assault with a Dangerous Weapon/Unlawful Possession of a Firearm (2020-CF3-005933)

On June 28, 2020, Mr. Yarborough placed multiple lives in grave risk of injury.   On that day, he was near the Federal City Shelter, in the 400 block of 2nd Street NW, Washington, D.C. While there, another individual approached him, and they exchanged heated words with each other.   Both initially walked away before the other individual pulled out a firearm and began firing at Mr. Yarborough.

Mr. Yarborough immediately removed a backpack he was wearing, grabbed the gun inside, and started firing.   The other individual ran away, but Mr. Yarborough did not give up.   He ran after the other individual, firing his weapon as he did so.   The other individual managed to get into a van, which then sped off.   While the van was driving away—and in broad daylight while standing in the middle of the street—Mr. Yarborough repeatedly fired his gun at the van.

Multiple pedestrians were in the area at the time.   The defendant's actions—including repeatedly firing a gun at a van driving away—was caught on surveillance video.   In the video, smoke can be seen coming from Mr. Yarborough's gun as he chases after the van, evidence that he is actually firing the weapon in the middle of the street.   A screenshot is below, showing Mr. Yarborough kneeling in the street with a gun:



*Figure 4 – Screenshot of surveillance video on June 28, 2020, showing Mr. Yarborough pointing a gun in the middle of the street*

When Mr. Yarborough was arrested for this shooting, he had a fully loaded semi-automatic Glock in his waistband, holding 22 rounds of .40 caliber ammunition.

Mr. Yarborough pled guilty to Assault with a Dangerous Weapon and Unlawful Possession of a Firearm.   He acknowledged in open court that he knew he had been previously convicted of

a crime punishable by more than one year.   He was sentenced on the top count to 48 months, with all but 36 months suspended, and two years' supervised probation.

Attempted Distribution of a Controlled Substance – Cocaine (2019-CF2-003501)

On March 13, 2019, officers observed Mr. Yarborough sitting inside the McPherson Metro stop making multiple drug transactions. Officers saw him receive money and hand out a small, white object from a clear bag. When stopped, officers recovered white, rock-like substances from Mr. Yarborough's person, weighing 4.1 grams, a digital scale that had white residue, and a razor.

During this case, Mr. Yarborough failed to appear for court and had an active bench warrant for over three months.   He also had a total of six notices of non-compliance filed against him. Three notices occurred before his plea for positive drug tests and missed mental health appointments.

Mr. Yarborough pled guilty to Attempted Distribution of a Controlled Substance, but he was given the opportunity to complete an amended sentencing agreement.   Had Mr. Yarborough completed it successfully, he could have reduced his felony to a misdemeanor.   Instead, Mr. Yarborough was non-compliant with his conditions, receiving three notices of non-compliance for failing to report to his pretrial officers, failing to attend his mental health appointments, and for committing a new crime—the 2020 shooting and firearm offense case.   He was sentenced to 18 months, with all but four months suspended, to run consecutive to his sentence in the 2020 shooting case.

Destruction of Property (2017-DVM-000278)

On February 28, 2017, Mr. Yarborough was arrested on domestic violence charges.   At the time, Mr. Yarborough shared custody of his daughter with the victim.   After a dispute about

taking their daughter out of the apartment without clothes, the victim stated that Mr. Yarborough became angry and pushed her.   Mr. Yarborough then picked up a hammer and began striking the front doorknob, before flipping over a table, causing it to shatter.   After a bench trial, Mr. Yarborough was convicted of two counts of destruction of property less than $1000 and acquitted of one count of simple assault.

He was first sentenced to 9 months' probation.   Less than forty days later, the Court issued an order to show cause why probation should not be revoked.   Ultimately, the Court revoked probation, sentencing Mr. Yarborough to 15 days jail.

Attempted Possession of Liquid PCP (2014-CF2-018921)

On October 25, 2014, Mr. Yarborough was arrested for possessing PCP.   He pled guilty to Attempted Possession of Liquid PCP and received a probationary sentence under the Youth Rehabilitation Act.   This conviction appears to have been set aside under the YRA.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community. *See id.* "For purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); s*ee also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

A review of the 3142(g) factors makes clear that no condition or combinations of conditions will assure the safety of the community if Mr. Yarborough were to be released.

I.     __The Nature and Circumstances of this Offense Merit Detention.__

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. For violating 18 U.S.C. § 922(g)(1), Mr. Yarborough faces a maximum sentence of up to fifteen years' imprisonment. Within months of his release from prison and while supervised by probation, Mr. Yarborough received and possessed a stolen firearm loaded

with 9 bullets.    He did so while standing on a busy street corner at the intersection of P Street and

North Capitol Street NW – directly next to a bus stop and around the corner from Mundo Verde

Bilingual Public Charter School:



        While Mr. Yarborough is charged with a possessory offense, the inherent danger associated

with a loaded firearm cannot be discounted. *See United States v. Blackson*, No. 23-CR-25 (BAH),

2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C.

Cir. Mar. 28, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed

by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition

than the gun was originally manufactured to carry, thereby increasing its potential to do greater

harm" and placement "at the ready, on his person, and easily within reach").

        That possession is even more troubling when the person possessing the firearm has a

history of using the firearm against others. Mixing a loaded firearm with a violent history "has the

great potential to escalate into violence." *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (TNM) (upholding magistrate judge's detention order when the defendant had a loaded firearm and a violent history, including a conviction for armed robbery).   And adding in illegal drugs—like the "weed" here that field tested positive for amphetamines— "only heightens the risk of violence."   *Id.* (noting increased risk of violence when defendant had loaded firearm while using cocaine and opiates); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) (CKK) (finding possession of a firearm while on a drug like PCP "presents a serious danger to the community").

Even more, when police tried to stop him, Mr. Yarborough tried to flee.   When police did stop him, he struggled with them.   He then fled again, running into a basement apartment past a person working inside the apartment.

Mr. Yarborough had a loaded firearm, a history of shooting at people in public, a bag of amphetamine-laced weed, and a willingness to fight police and run into a random apartment to escape. The nature and circumstances of this offense weigh heavily in favor of detention.

## II.  <u>The Weight of the Evidence Against the Defendant is Formidable.</u>

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[1]   The Government's case against Mr. Yarborough is strong.

---

[1] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."   2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."   *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of

The body-worn camera footage undeniably shows the gun in Mr. Yarborough's waistband. The gun was recovered from his person.   Given that he has been convicted of multiple felony charges, including a charge for possessing a firearm as a previous offender, Mr. Yarborough is prohibited from possessing a gun.   And he served longer than a year on his last felony conviction, so he is aware that he has a conviction with a possible sentence greater than one year.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and this factor favors pre-trial detention.

## III.    The Defendant's History and Characteristics Merit Detention.

The third factor, Mr. Yarborough's history and characteristics, likewise weighs in favor of detention.

Mr. Yarborough has shown his willingness to fire a gun openly and repeatedly on the streets of this city.   Neither his time incarcerated nor his current probationary supervision have prevented him from obtaining an illegal gun.  *See* 18 U.S.C. § 3142(g)(3)(B) (identifying whether the defendant was on probation at the time of the offense as relevant in determining the defendant's history and characteristics).   Indeed, this arrest occurred less than eight months after Mr. Yarborough's release from incarceration for, among other things, unlawfully possessing a gun as a previous offender. *See United States v. Howard*, 2020 WL 5642288, at *3 (D.D.C. September

---

the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

21, 2020) (BAH) (finding illegal gun possession "is compounded by defendant's evident disregard of the law forbidding his possession of a firearm, given that the instant charge comes close on the heels of the defendant's 2019 D.C. Superior Court conviction for unlawful possession of a firearm").

Mr. Yarborough also has a history of drug convictions, including for attempted distribution of cocaine and possessing PCP.   As already discussed, at the time of this arrest, he had "weed" on him that field tested positive for amphetamines.

Moreover, Mr. Yarborough has been unsuccessful following conditions previously set by the court.   He failed to follow the amended sentencing agreement in his 2019 drug case. This lack of compliance included failing to report to his pretrial officer, failing to attend mental health appointments, and committing a new, violent offense (the 2020 shooting).   Before his plea in the 2019 drug case, he received three other notices of non-compliance.   He also failed to follow his probationary requirements in his 2017 misdemeanor case, resulting in the court revoking his probation.   Pre-Trial Services additionally noted that he has three previous bench warrants— including one warrant that lasted over three months.

Finally, Mr. Yarborough's behavior here when police approached him further shows concerning characteristics.   He tried to flee, struggled with police, then fled again into an apartment owned by a stranger.

The history and characteristics here "demonstrate[] a troubling pattern."   *See Cole*, 459 F. Supp. 3d at 121 (identifying that a violent criminal history, pervasive drug use, and failure to comply with conditions of supervision are concerning characteristics that favor detention).   Mr. Yarborough has repeatedly disregarded orders from the court and probation, he continues to

possess illegal drugs, and his actions in the summer of 2020 and in this case show a disregard for public safety.   This factor favors detention.

**IV.** **Mr. Yarborough Presents a Danger to Our Community.**

The fourth and final factor, danger to any person or the community posed by Mr. Yarborough's release, similarly weighs in favor of detention.

Mr. Yarborough's possession of this loaded stolen firearm in his waistband in a public place presented a significant danger to our community. *See United States v. Gassaway*, 2021 WL 4206616, at *3 (D.D.C. September 16, 2021) (RCL) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public.").   Mr. Yarborough possessed this loaded gun near a bus stop at a busy intersection, about a block away from a grade school.   This location was about a mile from where he had previously engaged in his shootout.

Nothing in Mr. Yarborough's history of recidivism and non-compliance suggests that he is prepared to change his behavior now.   As the *Gassaway* court asked, "Why would "strict" conditions and home confinement *now* stop [Yarborough] from unlawfully possessing loaded firearms when he has repeatedly violated that clear prohibition in the past?"   *Id.* at *5.   Nothing short of detention will work here.   Mr. Yarborough's reaction when police approached him highlights this.   He tried to flee, he struggled with the police, and then fled again.   He ran into a basement apartment that had a person inside working, all to prevent the police from finding a loaded firearm he knew he should not have.

Mr. Yarborough will continue to pose a danger to the community because he has shown he will continue to illegally possess guns, he has shown he is willing to use them, and he has shown

he is willing to flee from and fight the police to do so.   His willingness to do so in populated areas

of the city with no regard for pedestrians or others around him only heightens that danger.   This

factor weighs heavily in favor of detention.

## **CONCLUSION**

For these reasons, the Government requests that the Court detain Mr. Yarborough pending

trial in this case.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


By:      */s/ Ryan Lipes*
Ryan Lipes
Special Assistant United States Attorney
N.Y. Bar No. 5404843
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-0844
Ryan.lipes2@usdoj.gov

16